UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  )
                           )
        Plaintiff,         )
                           )
    v.                     )   Civil Action No. 95-1211 (CRR)
                           )
AMERICAN BAR ASSOCIATION,  )   Filed:    **FILED**
                           )
        Defendant.         )             JUN 25 1996
                           )
                               NANCY MAYER-WHITTINGTON, CLERK
                                      U.S. DISTRICT COURT

### FINAL JUDGMENT

Plaintiff, United States of America, filed its Complaint on June 27, 1995. Plaintiff and defendant American Bar Association ("ABA"), by their attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law. This Final Judgment shall not be evidence or admission by any party with respect to any issue of fact or law. Therefore, before any testimony is taken, and without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is hereby ORDERED, ADJUDGED AND DECREED:

I.

### JURISDICTION

This Court has jurisdiction of the subject matter of this action and of the parties consenting to this Final Judgment. The Complaint states a claim upon which relief may be granted against the ABA under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.

## DEFINITIONS

As used in this Final Judgment:

(A) "ABA" means the American Bar Association and all of its components.

(B) "Accreditation Committee" means the Accreditation Committee of the Section of Legal Education and Admissions to the Bar of the ABA.

(C) "Board" means the ABA Board of Governors.

(D) "Council" means the Council of the Section of Legal Education and Admissions to the Bar of the ABA.

(E) "Faculty" means all persons who teach classes (except adjunct professors), including administrators who teach, emeritus or senior faculty, visiting professors, joint-appointed faculty, clinical instructors, and instructors holding short-term appointments.

(F) "Section" means the ABA's Section of Legal Education and Admissions to the Bar.

(G) "Standards," "Interpretations" and "Rules" mean the Standards for Approval of Law Schools and Interpretations and Rules of Procedure for Approval of Law Schools and Policies of the Council of the Section and its Accreditation Committee.

III.

## APPLICABILITY

This Final Judgment shall apply to the ABA and its governors, officers, employees, and full-time consultants involved in law school accreditation.

IV.

## PROHIBITED CONDUCT

The ABA is enjoined and restrained from:

(A) adopting or enforcing any Standard, Interpretation or Rule, or taking any action that has the purpose or effect of imposing requirements as to the base salary, stipends, fringe benefits, or other compensation paid law school deans, associate deans, assistant deans, faculty, library directors, librarians, or other law school employees, or in any way conditioning the accreditation of any law school on the compensation paid law school deans, associate deans, assistant deans, faculty, library directors, librarians, or other law school employees;

(B) collecting from or disseminating to any law school data concerning compensation paid or to be paid to deans, administrators, faculty, librarians, or other employees;

(C) using law school compensation data in connection with the accreditation or review of any law school; and

3

(D) adopting or enforcing any Standard, Interpretation or Rule, or taking any action that has the purpose or effect of prohibiting a law school from:

> (1) enrolling a member of the bar or graduate of a state-accredited law school in an LL.M. program or other post-J.D. program;
>
> (2) offering transfer credits for any course successfully completed at a state-accredited law school, except that the ABA may require that two-thirds of the credits required for graduation must be successfully completed at an ABA-approved law school; or
>
> (3) being an institution organized as a for-profit entity.

V.

### PERMITTED CONDUCT

Nothing herein shall be construed to prohibit the ABA from: (1) adopting or applying such other reasonable Standards, Interpretations or Rules, consistent with all other provisions of this Final Judgment, as are necessary to attract and retain a competent faculty; (2) investigating or reporting on whether a law school is in compliance with such Standards, Interpretations or Rules, or the cause of non-compliance; or (3) requiring that a law school take remedial action to comply with such Standards, Interpretations or Rules as a condition of obtaining or maintaining ABA approval. Nor shall anything herein be construed

4

to prohibit the ABA, upon receipt of a complaint concerning discrimination, from collecting and considering compensation information that is relevant to the allegations of discrimination in order to determine whether the school that is the subject of the complaint complies with Standards 211-213 or Interpretations thereunder that prohibit discrimination. Compensation information collected or considered in connection with such an inquiry will not include information concerning the levels of compensation paid by schools other than the school that is the subject of the complaint.

VI.

### ADDITIONAL RELIEF

The ABA shall:

(A) require that all Interpretations and Rules be subjected to the same public comment and review process and approval procedures that apply to proposed Standards;

(B) permit appeals from Accreditation Committee Action Letters to the Council;

(C) revise the Council's membership as follows:

   (1) for a period of five years, all elections shall be reported to the Board;

   (2) members shall serve staggered three-year terms, with a two-term limit; however, officers may serve as officers for an additional term beyond the six-year limit; and

    (3) no more than 50% of the members shall be law school deans or faculty;

 (D) revise the Accreditation Committee's membership as follows:

    (1) for a period of five years, all appointments shall be reported to the Board;

    (2) all members shall serve staggered two-year terms, with a three-term limit; and

    (3) no more than 50% of the members shall be law school deans or faculty;

 (E) revise the Standards Review Committee's membership as follows:

    (1) for a period of five years, all appointments shall be reported to the Board;

    (2) members shall serve one three-year term; and

    (3) no more than 50% of the members shall be law school deans or faculty;

 (F) require that no more than 40% of the members of the Nominating Committee for officers of the Section shall be law school deans or faculty;

 (G) require that each site evaluation team include, to the extent reasonably feasible, at least:

    (1) one university administrator who is not a law school dean or faculty member; and

    (2) one practicing lawyer, judge or public member;

6

(H)   require the Accreditation Committee after each meeting to send a written report to the Council, that may be done on a confidential basis if necessary, identifying all actions taken by it, including a list identifying all law schools on report or under review, and for each law school, identifying the areas of actual or apparent non-compliance and the length of time the law school has been on report or under review;

(I)   require the Council to send an annual report to the Board, that may be done on a confidential basis if necessary, on its accreditation activities during the preceding year, including a list identifying all law schools on report or under review, and for each law school, identifying the areas of actual or apparent non-compliance and the length of time the law school has been on report or under review;

(J)   require Council approval and Board receipt of annual and site inspection questionnaires before they are sent to law schools;

(K)   publish annually in <u>The ABA Journal</u> and the Section's <u>Review of Legal Education in the United States</u>:

  (1)   all proposed Standards, Interpretations, Rules, and Policies, and the name(s) of the sponsors of each; and

  (2)   the date, place, and names of the evaluators for each law school and foreign program inspected; and

(L)   hire, by October 31, 1995, an outside independent consultant who is an expert on education and accreditation and

7

who is not a legal educator, to assist in validating all Standards and Interpretations, as required by the Department of Education, and develop a plan for validation by December 31, 1995.

## VII.

### SPECIAL COMMISSION

The ABA shall:

(A) establish a Special Commission to Review the Substance and Process of the ABA's Accreditation of American Law Schools to determine whether the Standards, Interpretations, and Rules, and their enforcement governing the following subjects should be revised:

- (1) faculty teaching-hours;
- (2) leaves of absence, compensated or otherwise, for faculty and other staff;
- (3) the calculation of the faculty component of student-faculty ratios;
- (4) physical facilities;
- (5) the allocation of resources to a law school by the law school or its parent university; and
- (6) the treatment of bar preparation courses;

(B) require that the Special Commission complete its review no later than February 29, 1996. The Special Commission shall file its report with the Board. Upon completing its review, the Board shall file its report with the Court and the United States setting out its analysis and any proposed revisions; and

8

(C) allow the United States 90 days in which to review the Special Commission's report and determine whether to challenge any of the proposals. The United States may challenge any such proposal and, if the ABA chooses to defend it, the challenge will be decided by this Court applying a Rule of Reason antitrust analysis.

## VIII.

### COMPLIANCE PROGRAM

The ABA is ordered to maintain an antitrust compliance program which shall include designating, within 30 days of the entry of this Final Judgment, an Antitrust Compliance Officer with responsibility for accomplishing the antitrust compliance program and with the purpose of achieving compliance with this Final Judgment. The Antitrust Compliance Officer shall, on a continuing basis, supervise the review of the current and proposed activities of the ABA's law school accrediting activities to ensure that they comply with this Final Judgment. The Antitrust Compliance Officer shall be responsible for accomplishing the following activities:

(A) reviewing the ABA's Standards, Interpretations, Rules, and practices, and identifying and recommending the elimination of any provisions or activities that violate or are inconsistent with Sections IV or VI above to the Board or to the ABA's House of Delegates within 90 days of entry of this Final Judgment;

(B) distributing a copy of this Final Judgment within 30 days of entry to:

9

>   (1) all members of the Board and officers of the ABA, the Section and the Law Student Division;
>
>   (2) all members of the Council, Accreditation Committee and Standards Review Committee;
>
>   (3) all university presidents with ABA-approved law schools, the deans of all ABA-approved law schools, the Chief Justices or Judges of the highest Courts of the States and other admitting jurisdictions, and to make a best effort to notify the deans of all state-accredited law schools; and
>
>   (4) all persons serving on site inspection teams during the term of this Final Judgment;

(C) causing this Final Judgment to be published in the next issue of The ABA Journal and the Student Lawyer following the entry of the Final Judgment;

(D) providing the United States, during the term of the Final Judgment, a copy of all proposed changes to the Standards, Interpretations and Rules before they are acted on by the House of Delegates, and a copy of all Standards, Interpretations and Rules adopted by the House;

(E) briefing annually the Section's officers, all members of the Council, Committee and Standards Review Committee, the Consultant and the Consultant's staff, and all participants at site inspectors' workshops on the meaning and requirements of this Final Judgment;

10

(F) obtaining from all Section officers, all members of the Council, Accreditation Committee and Standards Review Committee, and the Consultant and the Consultant's staff an annual written certification that they: (1) have read, understand, and agree to abide by the terms of this Final Judgment; and (2) are not aware of any violation of this Final Judgment that they have not reported to the Antitrust Compliance Officer; and

(G) obtaining from the Executive Director of the ABA, the Consultant and the Consultant's staff, an annual written certification that they have been advised and understand that their failure to comply with the Final Judgment may result in conviction for contempt of court.

## IX.

### CERTIFICATION

(A) Within 90 days after the entry of this Final Judgment, the ABA shall certify to the United States whether it has designated an Antitrust Compliance Officer and has distributed the Final Judgment in accordance with Section VIII above.

(B) For 10 years after the entry of this Final Judgment, on or before its anniversary date, the Antitrust Compliance Officer shall certify annually to the Court and the United States whether the ABA has complied with the provisions of Section VIII.

(C) At any time, if the Antitrust Compliance Officer learns of any past, current or anticipated violation of Sections IV or VI of this Final Judgment, the ABA shall, within 45 days after such knowledge is obtained, take action, or where appropriate



initiate action, to terminate or modify the activity so as to comply with this Final Judgment.

### X.

### PLAINTIFF ACCESS

(A) To determine or secure compliance with this Final Judgment, duly authorized representatives of the United States shall, upon written request of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to the ABA, be permitted:

    (1) access during the ABA's office hours to inspect and copy all records and documents in its possession or control relating to any matters contained in this Final Judgment; and

    (2) to interview the ABA's officers, employees, or agents, who may have counsel present, regarding such matters. The interviews shall be subject to the ABA's reasonable convenience and without restraint or interference by the ABA.

(B) Upon the written request of the Assistant Attorney General in charge of the Antitrust Division, the ABA shall submit such written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

(C) No information or documents obtained by the means provided in this Section X shall be divulged by the United States to any person other than a duly-authorized representative of the executive branch of the United States, except in the course of

legal proceedings to which the United States is a party, or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

XI.

## FURTHER ELEMENTS OF DECREE

(A) This Final Judgment shall expire 10 years from the date of entry.

(B) Jurisdiction is retained by this Court for the purpose of enabling either of the parties to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish violations of its provisions.

(C) Entry of this Final Judgment is in the public interest.

DATE: June 25, 1996

_____
UNITED STATES DISTRICT JUDGE